484 P.2d 723

**SKAGGS DRUG CENTERS, INC., a Delaware corporation, Plaintiffs and Appellants,**

v.

**Raedel E. ASHLEY et al., Defendants and Respondents.**

No. 12123.

Supreme Court of Utah.

April 16, 1971.

Jones, Waldo, Holbrook & McDonough, H. R. Waldo, Jr. and Jack Lunt, Bruce C. Hafen of Strong, Poelman & Fox, Salt Lake City, for plaintiffs-appellants.

Kent B. Linebaugh, Salt Lake City, for defendant-respondent Key Rexall Drug.

James E. Faust, Salt Lake City, for defendant-respondent Warren's Holladay Pharmacy.

Max K. Mangum, Salt Lake City, for defendant-respondent Success Pharmacy.

1. Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176; De Vas v. Noble, 13 Utah 2d 133, 369 P.2d 290.

Phil L. Hansen, Salt Lake City, for defendants-respondents, Westside Drug Store, The Broadway, Inc. and Sixth Avenue Pharmacy.

Richard H. Moffat, Salt Lake City, for defendant-respondent Harmon City, Inc.

O. Robert Meredith, Salt Lake City, for defendant-respondent Kearns Drug Center, Inc.

Ned Warnock and A. M. Ferro, Salt Lake City, for defendants-respondents, The Prescription Pharmacy, Inc., and Lowe's Pharmacy, Inc.

Gerald R. Hansen, Salt Lake City, for defendants-respondents Allied War Surplus and Beaver Grocery.

Ricardo B. Ferrari, Salt Lake City, for defendant-respondent Mountair Pharmacy.

Douglas E. Roth, President, Hyland Pharmacy, Inc., Salt Lake City, (no attorney involved).

Bryce E. Roe and Ralph L. Jerman, Salt Lake City, for defendants-respondents Kwikee Market and The Southland Corp., dba 7–11 Food Stores.

Justin C. Stewart, Salt Lake City, for defendant-respondent Ward Market, Inc.

Robert M. Yeates, Salt Lake City, for defendant-intervenor, Grand Central, Inc.

Parker M. Nielson, Salt Lake City, for defendants-respondents A. B. Cooper, dba Kearns IGA Foodliner and L. B. Grainger, dba Grainger's IGA Foodliner.

Richard Giauque, Salt Lake City, for defendant-respondent Albertson's, Inc.

Curtis K. Oberhansley, Salt Lake City, for defendant-respondent John Carlson Stereo Living Rooms, Inc.

Robert W. Inscore, J. and E. Market, Salt Lake City, (no attorney involved).

Robert D. Crofts, County Atty.'s Office, Salt Lake City.

TUCKETT, Justice:

The three cases here on appeal were consolidated in the district court for trial. The plaintiffs filed separate suits in the court below seeking to restrain the defendants in each case from violating Chapter 25, Laws of Utah, 1970.

The legislature during its budget session of January, 1970, passed the Act we are here concerned with entitled "Sunday Closing." After the effective date of the Act, the defendants remained open for business on a Sunday, and these proceedings were commenced by the plaintiffs to enjoin the defendants from continuing that practice. Following a hearing in the court below, a judgment was made and entered declaring the law to be unconstitutional.

The legislature enacted that statute relating to the establishment of Sunday as a day of rest and prohibited the performance of labor or the selling of goods on Sunday with certain exemptions. The Act by definition excluded labors of necessity; activi-

ties conducted solely for charitable or religious purposes; governmental activities of federal, state, municipal or local governments; activities of an emergency nature; and, isolated or occasional sales by persons not customarily engaged in business of selling goods or rendering services. The prohibition contained in Section 4 of the Act would seem to be all inclusive inasmuch as it provides that it shall be unlawful on Sunday for any person, firm or corporation to engage in or conduct business or labor for profit in the usual manner and location, or to operate a place of business open to the public, or to cause, direct or require any employee or agent to engage in such business or labor for profit.

Section 5 of the Act contains a large number of activities which are excepted from the operation of the prohibitions contained in Section 4. Subsection (1) provides as follows:

The sale of goods or rendering of services necessary to the maintenance of health, safety or life, such as, by way of example and not by way of limitation, medical or hospital goods or services or prescription medicine.

Other exceptions are contained in Subsections (2), (3), and (4) which read as follows:

(2) The sale of goods or rendering of services essential or incidental to operations which are customarily continuous, seasonally or otherwise, such as airlines, railroads, taxicabs, buslines or other transportation facilities: telephone, radio, television, or other communications facilities; power or water supplies and facilities or other public utilities; the extraction or processing of natural resources; manufacturing, processing or assembly plants whose equipment or processes require continuous operation.

(3) The sale of goods or rendering of services essential to travel by persons within or through the state, such as the rental of rooms or other living accommodations; sales of motor fuels and supplies or services customarily provided by automotive service stations; or sales of food or drink prepared for consumption on the premises where sold.

(4) The sale of goods or rendering of services normally associated with or incidental to the operation of recreational, educational or entertainment facilities, such as newspapers or periodicals; beverages, tobacco products and confections; maintaining theatres, resorts, golf courses, libraries, educational forums, scenic and tourist attractions.

The exceptions also provide that persons or corporations who do not conduct business on Saturday may remain open for business on Sunday.

While the violation of the statute is not deemed a crime, it is declared to be a pub-

lic nuisance, and any person or county attorney may seek an injunction restraining such violation.

The so-called Sunday laws constitute one of those areas where the State seeks to regulate private conduct.

These laws originally grew out of religious concepts and practices,[1] but in recent times they have evolved into business regulatory statutes.[2]

Historically, such regulation has been exercised as part of the State's police power.[3] The exercise of the police power must have a reasonable relationship to the public safety, health, morals, or general welfare. The courts have usually shown deference to the findings of the legislature of what is detrimental to the public welfare. In the statute before us, the legislature found "that it is socially desirable to promote weekly rests from the routine of daily affairs and to promote family and social relaxation and entertainment on a uniform day." It is doubtful that the legislature by making that finding intended that the adoption of the statute was intended to be an exercise of police power. However,

we need not decide these matters upon that basis, as it seems to us that the critical matter to be decided by the court is whether or not the statute is so vague as to be subject to challenge upon constitutional grounds.

As stated above, the prohibitions contained in Section 4 would seem to be all inclusive except those activities excluded by definition, but the exceptions contained in Section 4 are so broad in scope as to cast doubt as to what activities the legislature intended to proscribe. For instance, the exception contained in Subsection (1) of Section 5 permits the sale of goods or the rendering of services necessary to the maintenance of health, safety or life, and gives by way of example the sale of medical or hospital goods or services or prescription medicine. It requires no great stretch of the imagination to think of numerous other goods or services necessary to the maintenance of health, safety or life. Subsection (3) also permits the sale of goods or rendering of services essential or incidental to operations which are customarily continuous, seasonally or other-

1. Rodman v. Robinson, 184 N.C. 593, 47 S.E. 19.

2. Former Governor George Dewey Clyde in vetoing a 1959 Sunday closing law said "[T]he major support [for the measure] comes from a group of retail merchants who are seeking by this means to regulate competition within their own industry." Ref. 43 North Carolina Law Review 133.

3. State v. Sopher, 25 Utah 318, 71 P. 482; Rodman v. Robinson, supra; Nation v. Giant Drug Co. (Wyo.), 396 P.2d 431; Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27; Wyoming Law Journal, Vol. 18. p. 42; University of Chicago Law Rev. Vol. 37, No. 3, p. 605.

wise, followed by a number of examples the legislature intended to except from the general operation of the statute. The other exceptions contained in Section 5 are couched in general language similar to that noted above, followed by examples of the activities which the legislature intended to permit. The statute by specifying general categories of goods which may be sold or services rendered which are to be excepted from the operation of the prohibitions contained therein has left it up to those persons who might be affected by the statute to determine what is permitted and what is prohibited. It would seem that the only activities mentioned in the exceptions which are definite and certain are the examples given in the various categories. We are of the opinion that the legislature by providing exceptions to the operation of the statute in such general terms has failed to make ascertainable standards of conduct expected of those affected by the statute and also what activities are permitted and what activities are prohibited.[4] While it is argued that this not being a criminal statute the challenge for vagueness will not lie, nevertheless, one who may be affected by the operation of the statute may be subject to civil sanctions. However, any statute whose terms are so vague that a person of ordinary intelligence could only guess at its meaning and differ as to its application fails to meet the standard of due process. We are of the opinion that the statute we are here concerned with is invalid and that the decision of the court below should be affirmed, and it is so ordered. No costs awarded.

CALLISTER, C. J., and HENRIOD, ELLETT and CROCKETT, JJ., concur.

---

4. Toronto v. Sheffield, 118 Utah 460, 222 P.2d 594; Kent Club v. Toronto, 6 Utah 2d 67, 305 P.2d 870; Great Salt Lake Authority v. Island Ranching Co., 18 Utah 2d 276, 421 P.2d 504; State v. Hill, 189 Kan. 403, 369 P.2d 365, 91 A.L.R.2d 750; Gronlund v. Salt Lake City, 113 Utah 284, 194 P.2d 464; G. I. Surplus Stores, Inc. v. Hunter, 257 N.C. 206, 125 S.E.2d 764; State v. Hill, 189 Kan. 403, 369 P.2d 365; North Carolina Law Review, Vol. 43, p. 138.