2023 UT App 99

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
RANDY STEVEN CORDOVA,
Appellant.

Opinion
No. 20230303-CA
Filed August 31, 2023

Second District Court, Ogden Department
The Honorable Joseph M. Bean
No. 221903577

Emily Adams, Freyja Johnson, and Melissa Jo
Townsend, Attorneys for Appellant

Sean D. Reyes and Tanner R. Hafen,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and DAVID N. MORTENSEN
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 Randy Steven Cordova appeals the district court's denial of his request to be released pending trial on a felony charge of distribution of a controlled substance. The court denied Cordova bail after finding that substantial evidence supported the charge, that Cordova's release would pose a danger to the community, and that he was a flight risk. Cordova argues the court erred in concluding that clear and convincing evidence supported its danger to the community and flight risk findings. We disagree and affirm.

BACKGROUND[1]

¶2    In July 2022, a confidential informant told police that Cordova was selling fentanyl pills and methamphetamine. An undercover police officer was contacted by Cordova, who agreed to sell some pills to the officer. The two met up at a location chosen by Cordova, and Cordova sold the officer twenty "M30" pills suspected of containing fentanyl. The officer video recorded the sale.

¶3    The State charged Cordova with distribution of a controlled substance, a second-degree felony. At the time the charge was filed, the State filed a motion for pretrial detention requesting that Cordova be held without bail because "there is substantial evidence supporting the charge and clear and convincing evidence that [Cordova] would constitute a substantial danger to any other individual or to the community or is likely to flee the jurisdiction of the court."

¶4    After Cordova was arrested, he appeared before the district court on the felony distribution charge. The court noted that Cordova had other pending misdemeanor cases and arrest warrants and that he had been charged with three counts of possession of a controlled substance as well as two counts of possession of drug paraphernalia. At this hearing, Cordova's attorney told the court that Cordova "wishes to be released on bail" and that he had explained to Cordova that "for someone with warrants, it's kind of hard." The court denied Cordova's request for release and set the matter for a detention hearing.

¶5    At the detention hearing a few weeks later, Cordova disputed that he was selling fentanyl, and he argued that he should be afforded pretrial release because the distribution charge was his only felony charge, the other charges were misdemeanors,

_____

1. A criminal defendant retains the presumption of innocence that attaches prior to conviction.

and he had only failed to appear before the court in a previous pretrial release because "he was dirty, and he panicked." As set forth in its motion for pretrial detention, the State argued that Cordova "had been previously granted a pretrial services release then failed to appear, at which time he picked up this newest case wherein he sold 20 fentanyl pills to an undercover strike force agent . . . and that he would be a danger to the community, and his conduct and failure to appear in his misdemeanor cases shows that he's also a . . . flight risk." The district court agreed with the State and denied bail. The court found that somebody selling and distributing drugs is "absolutely . . . a danger to the community." In addition, the court found that, with his history of not reporting to pretrial services, Cordova was "also a danger of flight." Cordova appeals this ruling.

## ISSUE AND STANDARD OF REVIEW

¶6 Cordova asserts that the district court erred in denying his motion for pretrial release or bail, specifically that the court erred in concluding that he is a danger to the community and that he is a flight risk. A district court's determination that there is clear and convincing evidence that the defendant is a substantial danger or likely to flee if released is reviewed deferentially, and this court will reverse that determination only if it is clearly erroneous. *Randolph v. State*, 2022 UT 34, ¶ 49, 515 P.3d 444.

## ANALYSIS

¶7 In Utah, the right to bail is governed by the Bail Provision of the Utah Constitution and the Bail Statute enacted by the Utah Legislature. *See* Utah Const. art. I, § 8; Utah Code § 77-20-201. Under the Bail Provision, "[a]ll persons charged with a crime shall be bailable" except when, among other exceptions, "the court finds by clear and convincing evidence that the person would constitute a substantial danger to any other person or to the

community or is likely to flee the jurisdiction of the court if released on bail." Utah Const. art. I, § 8(1)(c). Similarly, under the Bail Statute, a defendant charged with a felony can be detained if a district court finds that there is "substantial evidence to support the charge" and there is "clear and convincing evidence" that "the individual would constitute a substantial danger to any other individual or to the community" or "is likely to flee the jurisdiction of the court" if released on bail. Utah Code § 77-20-201(1)(c). The clear and convincing evidence standard "implies something more than . . . a preponderance, or greater weight, of the evidence; and something less than proof beyond a reasonable doubt." *Essential Botanical Farms, LC v. Kay*, 2011 UT 71, ¶ 24, 270 P.3d 430 (quotation simplified). "Courts that assess these comparative degrees of certainty have characterized the clear and convincing standard as the existence of facts that make a conclusion very highly probable." *Id.* (quotation simplified).

¶8 Here, Cordova does not contest that substantial evidence supports his felony charge in this case, but does contend that the district court's conclusions—that an individual distributing drugs is a danger to the community and that his failure to appear in a prior misdemeanor case suggests he is a flight risk—are clearly erroneous and should be reversed.[2] More specifically, in regard to

---

2. The district court found by clear and convincing evidence that Cordova was both a substantial danger and likely to flee if released. Because the Bail Statute uses the disjunctive "or," denial of bail can rest on a finding of either danger or flight risk. If we find the district court correctly evaluated one factor and affirm, we need not address the other factor. *See Randolph v. State*, 2022 UT 34, ¶ 81, 515 P.3d 444. There may be some merit to Cordova's argument that a solitary failure to appear is not clear and convincing evidence that he would flee the jurisdiction of the court. Moreover, failing to appear at one hearing is not similar to leaving the state to avoid facing charges, having substantial ties

(continued…)

the danger to the community factor, Cordova argues (1) that the crime of drug distribution is not comparable to a capital offense or an offense committed while on probation or parole, which are the other non-bailable exclusions in the Utah Constitution; (2) that selling fentanyl to an undercover police officer does not endanger the community at large; and (3) that the determination of whether an individual presents a danger to the community must not be based on general notions about the crime itself but rather should be based on an individual assessment of the person. We address each argument in turn.

¶9     First, Cordova contends that distribution of a controlled substance is not comparable to a capital offense or to felonies committed while on parole, which are specifically excluded from the constitutional right to bail. *See* Utah Const. art. I, § 8(1)(a)–(b) ("All persons charged with a crime shall be bailable except: (a) persons charged with a capital offense . . . or (b) persons charged with a felony while on probation or parole . . . ."). If the Bail Provision ended after subsection (b), Cordova might have a point that the bail exceptions create classifications and the "capital offense exception accentuates the gravity of the nature of the offense in order to sustain a denial of a fundamental right." *Scott v. Ryan*, 548 P.2d 235, 236 (Utah 1976). But as explained by our supreme court in *Randolph v. State*, 2022 UT 34, 515 P.3d 444, Utah citizens approved an amendment to the state constitution in 1988 that expanded the exceptions to a defendant's right to bail to include "any other crime, designated by statute as one for which bail may be denied." *Id.* ¶ 58 (quoting Utah Const. art. I, § 8(1)(c)); *see also State v. Kastanis*, 848 P.2d 673, 675 (Utah 1993) (stating that the focus of the constitutional amendment in 1988 "was on that

---

outside of Utah, and telling others of plans to leave Utah and go to another state. *See id.* ¶ 85. No such evidence was presented to the district court here, and a decision to deny bail solely based on Cordova's single failure to appear because he was "dirty" and "panicked" may have been clearly erroneous.

portion of the provision which permits denial of bail to persons charged with felonies of a lesser degree than capital crimes"). Thus, this constitutional provision authorizes our legislature to determine which additional crimes should be categorized as non-bailable.[3] And the Utah Legislature has determined that all felony charges are non-bailable so long as there is substantial evidence to support the charge and the individual constitutes a substantial danger to any individual or to the community or is likely to flee. *See* Utah Code § 77-20-201(1)(c). Thus, we agree with the State that the focus here is not the relative seriousness of Cordova's felony charge; it is whether the district court clearly erred in finding that Cordova's release would present a substantial danger to any individual or to the community.

¶10    This leads to Cordova's second challenge, that selling drugs to an undercover police officer does not pose a threat to the community because only the use of those distributed drugs may endanger an individual or the community. Here, we agree with the district court and other courts around the country, *see, e.g.*, *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989), that distributing

---

3. To be sure, while the right to bail is constitutionally guaranteed, when the government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause [of the United States Constitution], a court may disable the arrestee from executing that threat. Under these circumstances, we cannot categorically state that pretrial detention offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.

*United States v. Salerno*, 481 U.S. 739, 751 (1987) (quotation simplified).

drugs "absolutely is a danger to the community." It is common knowledge that fentanyl is one of the deadliest narcotics being sold and distributed in our communities. Merely two milligrams of the substance is a lethal dose for most people. *See* United States Drug Enforcement Administration, *Facts About Fentanyl*, https://www.dea.gov/resources/facts-about-fentanyl [https://per ma.cc/V3LM-9K49]. Moreover, the National Institute on Drug Abuse has observed that "[s]ome drug dealers are mixing fentanyl with other drugs, such as heroin, cocaine, methamphetamine, and MDMA. . . . This is especially risky when people taking drugs don't realize they might contain fentanyl as a cheap but dangerous additive," making overdose more likely. *See* National Institutes of Health, *Fentanyl DrugFacts*, https://www.drugabuse.gov/publications/drugfacts/fentanyl [htt ps://perma.cc/BG6N-84MW].[4] The information before the district court included a confidential informant's report that Cordova was selling fentanyl and methamphetamine in multiple northern Utah counties. And when the sale to the undercover officer occurred, Cordova was on pretrial release for another (misdemeanor) drug possession offense. This evidence demonstrates that Cordova is likely to continue to sell fentanyl in the community if released and provides clear and convincing support for the court's conclusion.

¶11　And finally, Cordova challenges the district court's safety determination as a generalized assessment that drug offenses are dangerous rather than an individualized assessment that Cordova would constitute a substantial danger to any other individual or to the community. While the mere fact of an arrest for a particular crime is not sufficient evidence warranting detention, the determination of whether a criminal defendant

---

4. We take judicial notice of the facts from these publicly available government websites because they are not subject to reasonable dispute and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Utah R. Evid. 201.

poses a safety risk cannot be divorced from the severity of the charged offense. The plain language of the Bail Provision indicates that the court must consider the evidence of a defendant's alleged crime—along with other relevant evidence and an individualized assessment of the defendant's circumstances—in deciding whether a person should be detained. That is what the district court did here. The court assessed the charges filed in this case (the supporting evidence for which Cordova does not contest) and considered Cordova's individual circumstances, such as the multiple other pending charges and Cordova's alleged continued distribution while on pretrial release. Accordingly, the district court did not clearly err in denying Cordova's request to be released.

## CONCLUSION

¶12   The district court did not err in ruling that clear and convincing evidence existed that Cordova constituted a substantial danger to any individual or to the community and therefore did not err in denying Cordova bail.

¶13   Affirmed.

————————